IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SHARON K. PRINGLE,                    )
                                      )
                 Plaintiff,           )
                                      )    CIVIL ACTION
v.                                    )
                                      )    No. 06-4112-JAR-JTR
                                      )
MICHAEL J. ASTRUE,[1]                 )
Commissioner of Social Security,      )
                                      )
                 Defendant.           )
_____)


REPORT AND RECOMMENDATION


Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C.

---

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

§ 405(g) REMANDING the case for further proceedings in accordance with this opinion.

## I.    Background

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and upon reconsideration.  (R. 16, 27-30).  Plaintiff requested and received a hearing before an Administrative Law Judge (ALJ) at which she was represented by an attorney.  (R. 16, 418-48). Testimony was taken at the hearing from plaintiff and a vocational expert.  (R. 419).  The ALJ filed a decision in which he found that plaintiff is not disabled within the meaning of the Act and denied plaintiff's applications.  (R. 16-26).

Specifically, the ALJ found that plaintiff has a severe combination of impairments consisting of obesity; "possible fibromyalgia syndrome;" depression and dependent personality disorder; history of:  asthma, hysterectomy, and repaired hernia; GERD; and annular tear in intervertebral disc at L5-S1, but that the impairments do not meet or equal the criteria of any listed impairment.  (R. 24-25).  The ALJ considered and discussed the opinions of two consultant examining medical sources, Dr. Fortune and Dr. Mintz (R. 18-19), and of plaintiff's treating physician, Dr. Spencer (R. 22), and "considered the opinions of the State Agency medical consultants regarding the claimant's statements about her limitations due to symptoms."  (R. 23)(citing "Social

Security Rulings 96-P, [sic] 96-6p, 96-8p).  He found plaintiff's allegations concerning the severity of limitations caused by her symptoms are not credible (R. 20-21), found the opinion of plaintiff's treating physician is not worthy of controlling weight, and decided to give "little weight" to that opinion.  (R. 22).  He assessed plaintiff with the residual functional capacity (RFC) for light work which allows the option to sit or stand at will with no prolonged exposure to extreme environmental irritants and only occasional stair climbing.  (R. 23).  He found that plaintiff is mentally limited to low stress jobs with job tasks requiring only simple or intermediate intellectual abilities and not requiring high levels of social interaction. Id.  Based upon the RFC assessed and the testimony of the vocational expert, he found plaintiff cannot perform her past relevant work; but also considering plaintiff's age, educational background, and work experience, he found plaintiff is able to perform other work existing in significant numbers in the economy such as work as a bench assembler, a pressing machine operator, or a laundry folder.  (R. 23-24).  Therefore, he found her not disabled and denied her applications.  (R. 24, 25-26).

Plaintiff sought review by the Appeals Council, but was denied.  (R. 12, 8-10).  The ALJ's decision is the final decision of the Commissioner.  (R. 8); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

-3-

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C.
§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of
the Commissioner as to any fact, if supported by substantial
evidence, shall be conclusive."  The court must determine whether
the factual findings are supported by substantial evidence in the
record and whether the ALJ applied the correct legal standard.
White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).
Substantial evidence is more than a scintilla, but less than a
preponderance, it is such evidence as a reasonable mind might
accept to support the conclusion.  Gossett v. Bowen, 862 F.2d
802, 804 (10th Cir. 1988).  The court may "neither reweigh the
evidence nor substitute [it's] judgment for that of the agency."
White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human
Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of
whether substantial evidence supports the Commissioner's
decision, however, is not simply a quantitative exercise, for
evidence is not substantial if it is overwhelmed by other
evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d
at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that she has a physical or mental impairment which
prevents her from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of

-4-

at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2005).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals one in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

**III. Arguments**

Plaintiff claimed in her initial brief that the transcript of the ALJ hearing was deficient and required remand because it contained a total of seventy notations that the testimony was "[INAUDIBLE]," and, as a result, so much of the testimony was disrupted that the court would be unable to perform an independent judicial review.  (Pl. Br. 28).  In his brief, the Commissioner did not address plaintiff's argument, but concurrent with filing his brief, filed a "Supplement to Social Security Administrative Record" consisting of "a true and corrected transcription of the testimony taken at the [ALJ] hearing held May 9, 2005."  (Doc. 17, unnumbered introductory page, entitled "Supplemental Certification").  In her reply brief, plaintiff acknowledged the corrected transcript and noted that fifty-three

-6-

of the previously "INAUDIBLE" portions were now transcribed, but that seventeen locations still contained "INAUDIBLE" notations. (Reply 2).  Plaintiff then supplemented or corrected the summary of testimony provided in her initial brief but did not renew her argument that the court would be unable to perform an independent judicial review based on the corrected transcription.

The court has reviewed the corrected transcription of the ALJ hearing and finds that the transcript provides substantially all of the hearing testimony and is sufficient to allow the court to perform an independent judicial review of the ALJ's decision. However, the fact that the Commissioner was able to correct fifty-three previously-reported "[INAUDIBLE]" portions of a thirty-page transcript causes the court to wonder about the quality of transcripts which are routinely provided with the administrative record in Social Security cases.  Perhaps the Commissioner should review his procedures for recording and transcribing the records of hearings to ensure the best transcription possible in every case.

Plaintiff claims:  the ALJ erred at step two in finding a severe impairment of only "possible fibromyalgia syndrome" rather that fibromyalgia (Pl. Br. 39-40); erred in weighing the opinion of the treating physician, Dr. Spencer, and improperly failed to indicate the weight given to the opinions of Drs. Fortune and Mintz and given to the opinions of the "State Agency medical

consultants" (Pl. Br. 44-49); erred in determining the
credibility of plaintiff's allegations of symptoms; (Pl. Br. 29-
43); and as a result of the other errors failed to include Dr.
Spencer's restrictions and plaintiff's testimony regarding her
need to lie down and her need to use the restroom frequently
throughout the day in his hypothetical question to the vocational
expert. (Pl. Br. 49-52). The Commissioner argues that finding a
severe impairment of "possible fibromyalgia syndrome" rather than
fibromyalgia is not error; that the ALJ properly evaluated the
medical opinions; that the ALJ properly evaluated the credibility
of plaintiff's allegations, and substantial evidence supports the
evaluation; and that the ALJ's RFC assessment is supported by
substantial evidence justifying the ALJ's reliance on the
hypothetical question presented to the vocational expert. The
court first addresses plaintiff's claim the ALJ erred at step two
in finding only "possible fibromyalgia syndrome."

**IV. Step Two Determination**

At step two an ALJ must consider and determine whether the
claimant's impairment or combination of impairments significantly
limits plaintiff's ability to do basic work activities. <u>Hinkle
v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997). To establish a
"severe" impairment at step two of the sequential evaluation
process, plaintiff must make only a "<u>de minimis</u>" showing. <u>Id.</u>
She need only show that an impairment would have more than a

minimal effect on her ability to do basic work activities.
Williams, 844 F.2d at 751.  However, she must show more than the
mere presence of a condition or ailment.  Id. (citing Bowen v.
Yuckert, 482 U.S. 137, 153 (1987)).

The regulations contemplate that an ALJ will consider
whether a claimant's impairments in combination are "severe."
"If you do not have any impairment or combination of impairments
which significantly limits your . . . ability to do basic work
activities, we will find that you do not have a severe impairment
and are, therefore, not disabled."  20 C.F.R. §§ 404.1520(c),
416.920(c)(emphasis added); see also 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)("If you do not have a
severe medically determinable . . . impairment . . . or a
combination of impairments that is severe . . ., we will find
that you are not disabled)(emphasis added).  Indeed, the
regulations require that where a claimant has multiple
impairments, the Commissioner "will consider the combined effect
of all of your impairments without regard to whether any such
impairment, if considered separately, would be of sufficient
severity.  If we do find a medically severe combination of
impairments, the combined impact of the impairments will be
considered throughout the disability determination process."  20
C.F.R. §§ 404.1523, 416.923: see also 42 U.S.C. §§ 423(d)(2)(C),
1382c(a)(3)(F)("the Secretary shall consider the combined effect

of all of the individual's impairments without regard to whether
any such impairment, if considered separately, would be of such
severity"). Thus, the regulations require that the ALJ's RFC
assessment include all functional limitations, even those caused
by impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2)
& (e), 416.945(a)(2) & (e).

Here, the ALJ stated, "medical evidence establishes that the
claimant has [an extensive list of impairments including
'possible fibromyalgia syndrome'], impairments which are severe."
(R. 24)(see also page two above, where the court summarized the
ALJ's list of impairments). The ALJ found that plaintiff has a
severe combination of impairments including "possible
fibromyalgia syndrome." Therefore, he was required to consider
all of plaintiff's functional restrictions, even those
attributable to impairments which are not themselves severe.
Plaintiff claims the ALJ erred in evaluating the medical opinions
and in evaluating plaintiff's credibility but she does not claim
the ALJ failed to consider specific functional restrictions
alleged to result from fibromyalgia.

Plaintiff claims that the ALJ erred in finding plaintiff has
"possible fibromyalgia syndrome" rather that finding plaintiff
has fibromyalgia. She argues that ALJ's are unfamiliar with the
diagnostic process of fibromyalgia, and that the record documents
the diagnosis of fibromyalgia, but she does not point to any

evidence showing the ALJ in this case missed or ignored the diagnosis or that the ALJ demonstrated an unfamiliarity with fibromyalgia which may have impacted his decision.  The Commissioner argues that the record contains very few diagnoses of fibromyalgia and that plaintiff points to no evidence that shows plaintiff has tender points that are associated with fibromyalgia.  In her reply, plaintiff cites to medical evidence indicating plaintiff has fibromyalgia, or has complained of body aches or joint pain, but points to no evidence regarding tender points.  (Reply 8-9).  She asserts that the Commissioner's argument is merely post hoc rationalization and the ALJ's decision must stand or fall on its own bases.

As the Commissioner's argument implies, eleven positive "tender points" out of eighteen fixed locations on the body are generally considered necessary to a definitive diagnosis of fibromyalgia.  Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996).  The record contains no evidence any doctor evaluated the number of such "tender points" evident on examination of plaintiff.  Moreover, although the medical evidence reveals annotations regarding fibromyalgia, there is no specific point where the record reveals a physician evaluated the evidence and definitively concluded plaintiff has fibromyalgia.  By finding plaintiff has "possible fibromyalgia syndrome," the ALJ demonstrated that he had considered the evidence suggesting

-11-

plaintiff has fibromyalgia and was prepared to consider the functional limitations which might result from that condition. Because the evidence here does not provide a definitive diagnosis, because the evidence does not establish that any physician considered the number of "tender points" evident upon examination of plaintiff, because there is no laboratory test which reveals the presence or severity of fibromyalgia; Sarchet, 78 F.3d at 306; and because (as plaintiff argues) a diagnosis of fibromyalgia involves ruling out other diseases; Lantow v. Chater, No. 95-5262, 1996 WL 576012 at *1 (10th Cir. Oct. 8, 1996); the court cannot find that the ALJ erred in finding "possible fibromyalgia syndrome" rather than "fibromyalgia" among plaintiff's severe combination of impairments.  Moreover, plaintiff does not present any evidence tending to establish that a finding of "fibromyalgia" might have affected the ALJ's analysis in any way.

Plaintiff's claim that the Commissioner's argument is inappropriate post hoc rationalization is unavailing.  The Commissioner does not justify the ALJ's decision by presenting a basis different than that presented in the decision.  He merely points to evidence in the record which supports the ALJ's determination.  The ALJ found that plaintiff has "possible fibromyalgia syndrome."  As the Commissioner pointed out and as

the court finds, substantial evidence in the record supports the ALJ's finding.  The court finds no error at step two.

V.    **Evaluation of Medical Opinions**

    A.    **Standard for Evaluating Medical Opinions**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  All such opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2007).  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir.

-13-

2003); 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see</u> <u>also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition.  <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of examining sources are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).  Although ALJs are not bound by opinions from state agency physicians and medical experts, they must consider and evaluate such opinions using the regulatory factors previously enumerated and must explain the weight given those opinions.  20 C.F.R. §§ 404.1527(f)(2)(ii & iii), 416.927(f)(2)(ii & iii).

-14-

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2007).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins, 350 F.3d at 1300-01.  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record.  Id. (citing SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id.

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.**   **Analysis**

The ALJ noted that a treating physician's opinion will be "given controlling weight if it is well supported." (R. 22).  He acknowledged that Dr. Spencer is plaintiff's treating physician but in the very next paragraph stated, "Dr. Spencer's opinions . . . are not supported by well documented medical evidence, treatment records or the totality of the evidence."  Id.  The court understands the decision to find that Dr. Spencer's opinion is unworthy of controlling weight because it is inconsistent with the substantial evidence in the case record.  Plaintiff does not claim error in the decision not to give controlling weight to the treating physician's opinion.

Where the treating physician's opinion is not worthy of controlling weight, all of the medical opinions must be evaluated pursuant to the regulatory factors provided in 20 C.F.R. § 404.1527 and 416.927.  20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24

(Supp. 2007); compare Watkins, 350 F.3d at 1300(even when not given controlling weight, the treating source opinion is worthy of deference and must be weighed in accord with the regulatory factors).  Moreover, if the opinions of non-treating sources are to be given greater weight than that of a treating source, "the ALJ's task is to examine the other physicians' reports 'to see if [they] 'outweigh[]' the treating physician's report, not the other way around.'"  Goatcher, 52 F.3d at 289-90(quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)).

Here, plaintiff' claims both that the ALJ improperly weighed Dr. Spencer's treating source opinion and erroneously failed to specify the weight given to the opinions of the examining sources, Drs. Fortune and Mintz, and to the opinions of the state agency non-examining sources.  He argues:  that the ALJ merely made a boilerplate assertion that plaintiff's condition improved with treatment; that the ALJ cited to a single treatment note in discounting the physician's opinion; that directly contrary to plaintiff's testimony, the ALJ speculated that the physician provided an opinion to assist in plaintiff's disability claim which was much more restrictive than treatment notes and treatment records; and that the ALJ completely failed to explain the weight given to the opinions of Dr. Fortune, of Dr. Mintz, and of the state agency physicians. (Pl. Br. 44-49).  The Commissioner argues that the ALJ properly evaluated the medical

opinions.  Specifically, he argues:  that the ALJ cited a
treatment note in which Dr. Spencer noted that plaintiff was
"doing fine" despite tenderness and poor lower back range of
motion; that Dr. Spencer did not cite specific findings to
support the Medical Source Statement he provided; that other
medical records show essentially normal findings; and that the
decision shows that the ALJ clearly accorded "significant weight"
to the opinions of Drs. Fortune and Mintz and "some, but not
significant weight" to the state agency physician's opinion.
(Comm'r Br. 4-6).  Upon review of the decision, the court finds
error in the ALJ's evaluation of the medical opinions.

The ALJ's finding that Dr. Spencer's treatment notes show
improvement with treatment is not supported by substantial
evidence in the record.  The court will not assume Dr. Spencer's
statement that plaintiff "is doing fine" means that plaintiff has
no problems or that plaintiff's condition has improved with
treatment.  In that same note, Dr. Spencer stated that plaintiff
continued on Oxycodone, had a cortisone injection "which really
didn't help much," and had "Very poor range of motion and
tenderness in the lower lumbosacral area," and the doctor started
plaintiff on Neurontin.  (R. 348).  While one might reasonably
assume that "doing fine" in this situation means that plaintiff's
condition has not gotten worse, it is not reasonable from this
one treatment note to assume that her condition has improved with

-18-

treatment.  Further, the ALJ makes no analysis of Dr. Spencer's records over a period of time to support his assertion that the records demonstrate that plaintiff's condition has improved with treatment.  The Commissioner's citation to evidence which shows essentially normal medical findings might support the ALJ's finding that Dr. Spencer's opinions are not supported by the totality of the evidence, but it says nothing about improvement with treatment.

An ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of the Commissioner's post hoc rationalizations for agency action; Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985); and a reviewing court may not create such rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  The ALJ provided specific reasons for discounting Dr. Spencer's opinion.  (R. 22).  His rationale did not include that the physician did not provide specific findings to support his Medical Source Statement or that the Statement is merely a checklist form.  Therefore, the court may not justify the decision based upon these arguments suggested in the Commissioner's brief.

In his final reason for discounting Dr. Spencer's opinion, the ALJ implied that he could discount the opinion because it was given merely to assist in securing disability payment:

> The undersigned is well aware of the weight to be given treating source opinion.  However, when that opinion is given to assist in disability claims it is often much more restrictive than treatment notes and treatment records which are used for medical treatment purposes which appears to be the situation in this case.

(R. 22).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports."  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  The Tenth Circuit "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician."  Id. at 1253 (citing Frey, 816 F.2d at 525).  Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin.  Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004).  Such a conclusion, if made, should be based upon evidence taken from the physician's records.  Victory v. Barnhart, 121 F. App'x 819, 823-24 (10th Cir. 2005).

Here, beyond the fact that Dr. Spencer was aware plaintiff was seeking disability, the ALJ provided no basis to find that Dr. Spencer's opinion was based merely on assisting plaintiff in

her disability claim.  That is reversible error because it is a speculative inference which is not based upon the record evidence.  The court does not intend to imply, however, that an ALJ may never find a physician's opinions are more restrictive than is reflected in his treatment notes or treatment records. Rather, such a finding must be based upon citation to evidence in the treatment notes, and comparison of the notes with the doctor's opinion, not upon speculation or an improper inference that the opinion was based merely on plaintiff's subjective complaints or on a desire to assist plaintiff in making a disability claim.  Remand is necessary for the Commissioner to provide a proper explanation for discounting the opinion of the treating physician.

Finally, because he did not give Dr. Spencer's opinion controlling weight, the ALJ must evaluate all of the medical opinions in accordance with the regulatory factors and explain the weight given to each opinion in reaching his RFC assessment. As plaintiff claims, the ALJ did not indicate what weight he gave the opinions of Dr. Mintz, Dr. Fortune, and of the State agency consultants who reviewed the medical evidence at the initial and reconsideration level.  The Commissioner argues that it is clear the ALJ accorded "significant weight" to the opinions of Drs. Fortune and Mintz because his RFC assessment is consistent with those examining sources' opinions.  (Comm'r Br. 5-6).  He also

argues that the record is clear the ALJ accorded "some, but not significant weight" to the opinion of the state agency physician because, consistent with the physician, the ALJ found plaintiff could sit, stand, and walk six hours a day; but not consistent with the physician, the ALJ found plaintiff can only lift twenty pounds occasionally and ten pounds frequently.

While the Commissioner's argument has a superficial appeal, it ignores the law that if the opinions of examining or non-examining sources are to be preferred over those of a treating source, the ALJ must "examine the other physicians' reports 'to see if [they] 'outweigh[]' the treating physician's report, not the other way around.'"   Goatcher, 52 F.3d at 289-90(quoting Reyes, 845 F.2d at 245).  Here, the ALJ did not perform the necessary examination of the other physicians' reports. Therefore, the court is unable to review the ALJ's evaluation to determine if it is supported by substantial evidence in the record.

Moreover, SSR 96-8P includes a narrative discussion requirement for an RFC assessment.  West's Soc. Sec. Reporting Serv., Rulings at 149 (Supp. 2007).  The discussion is to cite specific medical facts to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The

discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  <u>Id.</u>  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  <u>Id.</u> at 150.  Here, the ALJ did not explain how the ambiguities and material inconsistencies between the medical opinions of the treating source and the examining and non-examining sources were resolved, and did not explain why he did not adopt certain portions of the opinions of the examining and non-examining sources.

The court also notes the Commissioner's argument ignores that the ALJ found plaintiff's severe combination of impairments includes major depression and dependent personality disorder, necessarily rejecting the opinion of the non-examining state agency source who opined that plaintiff's mental impairments are not severe.  <u>Compare</u>, (R. 24) <u>with</u> (R. 308).  Further, the record contains two physical RFC assessment forms completed by non-examining physicians, and the Commissioner does not specify as to which opinion his argument refers.  (R. 270-77, 322-28).[2]  Remand

---

[2]One of the Physical RFC Assessment forms was apparently completed on both sides of the form, but only one side of the form was included in the administrative record.  (R. 322-28)(pages 323, 325, 327, and 329 are not in the record). Therefore, the court is unable to determine whether the two opinions are identical and whether the ALJ's RFC assessment is consistently different from both opinions.  On remand the Commissioner may reconstitute the record and ensure that each opinion is properly considered and evaluated.

is necessary for the Commissioner to properly weigh all of the medical opinions and explain the weight given to each.  If the Commissioner determines to give greater weight to the opinions of the examining and/or non-examining sources over that of the treating source, he must properly determine and explain whether those opinions outweigh the opinion of the treating source.

Because the case must be remanded for proper evaluation of the medical opinions, it would be premature for the court to consider whether the ALJ's credibility determination is proper and whether the ALJ properly formulated a hypothetical question to be relied upon at step five of the sequential process.  On remand, the Commissioner must ensure that the credibility of plaintiff's allegations of disabling symptoms is properly evaluated in light of a proper evaluation of the medical opinions.  On remand, plaintiff may make her arguments regarding the weight to be given her allegations.

**IT IS THEREFORE RECOMMENDED** that the decision be REVERSED and JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this

-24-

recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1114 (10th Cir. 2004).

 Dated this 7th day of September 2007, at Wichita, Kansas.


      s/John Thomas Reid
      **JOHN THOMAS REID**
      **United States Magistrate Judge**